UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

JUAN E. PUIG and                                CASE NO.: 07-15259-RAM
DIANA PUIG,                                           CHAPTER 7

      Debtors.                                     (Substantively Consolidated)

_____/

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ALAN GOLDBERG                                 ADV. PROC. NO. 13-01040-RAM
CHAPTER 7 TRUSTEE,

      Defendant.
_____/

ALAN GOLDBERG
CHAPTER 7 TRUSTEE,

      Counter-plaintiff,
v.

UNITED STATES OF AMERICA,

      Counter-defendant.
_____/

**UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS**

      Plaintiff-Counter-Defendant, United States of America, by and through undersigned counsel, submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

1

**A. The Claim for Refund**

1. In April 2012, Alan Goldberg, Chapter 7 Trustee, ("Trustee Goldberg") filed a Motion for Authority to Sign Amended Tax Returns for Pre-petition Tax Years on behalf of the debtors Juan E. Puig and Diana Puig (collectively "Debtors"). [Main Case ECF No. 713]. On April 13, 2012, the Court entered an Order granting the motion, which allowed Trustee Goldberg to sign amended federal income tax returns for tax years 2003, 2004 and 2005 on behalf of Debtors. [Main Case ECF No. 714].

2. Trustee Goldberg filed Internal Revenue Form 1045-Application for Tentative Refund ("Form 1045") with the IRS on behalf of the Juan & Diana Puig Bankruptcy Estate (the "Estate") with respect to Debtors' 2008 tax year. (See Defendant's Response to United States' Request for Admissions ("Admissions") at ¶¶ 1, 3, attached to the Declaration of Pascale Guerrier ("Guerrier Decl.") as Exhibit 2.)

3. The Form 1045 Trustee Goldberg filed with the IRS on behalf of the Estate indicated that there was a net operating loss ("NOL") generated in tax year 2008 available to carryback to Debtors' 2003, 2004 and 2005 tax years. (Admissions, ¶ 2).

4. Trustee Goldberg filed Internal Revenue Form 1040X-Amended U.S. Individual Income Tax Return ("Form 1040X") with the IRS regarding Debtors' 2004 tax year claiming NOL deductions and a corresponding decrease to Debtors' income tax liabilities for that year. (Admissions, ¶¶ 4, 5).

5. Trustee Goldberg filed a Form 1040X with the IRS regarding Debtors' 2005 tax year claiming NOL deductions and a corresponding decrease to Debtors' income tax liabilities for that year. (Admissions, ¶¶ 6,7).

6.      Trustee Goldberg filed Internal Revenue Form 1041-U.S. Income Tax Return for Estates and Trusts ("Form 1041") with the IRS on behalf of the Estate regarding tax year 2008. (Admissions, ¶¶ 8,10).

7.      The Form 1041 filed by Trustee Goldberg on behalf of the Estate contained an "Election Under Code Sec. 172(b)(1)(H) To Apply Extended NOL Carryback Period." (Admissions, ¶ 9).

8.      The Form 1045 and/or Form 1041 Trustee Goldberg filed with the IRS on behalf of the Estate contained a document entitled "Statement A" and "Information Regarding Taxpayer And Assumption Upon Which This Return Is Based." (Admissions, ¶ 11).

9.       The Statement A Trustee Goldberg filed with the IRS contained the following statement:

> "A.      The enclosed tax return has been prepared based on an analysis of all available information and represents the best efforts of the Trustee and prepare to present an accurate tax return based on the circumstances and the condition of the Debtor's records."

(Admissions, ¶ 12)

10.     The Statement A Trustee Goldberg filed with the IRS contained the following statement:

> "B.  The Trustee does not have possession of all corporate and financial accounting records or tax returns of the Debtor and has no additional information available."

(Admissions, ¶ 13).

11. The Statement A Trustee Goldberg filed with the IRS contained the following statement:

> "C. The Trustee and his professionals do not have sufficient financial data to calculate and determine any basis and loss limitations for the Debtors stemming from the S-corporation K-1's . . . that have been provided to the Trustee and the preparers by the bankruptcy plan administrator (and his professionals), which corporate Debtors are also in bankruptcy."

(Admissions, ¶14).

12. Trustee Goldberg originally submitted a Form 1045 on behalf of the Estate and Forms 1041 on behalf of Debtors to the IRS's Carry Back Loss Unit in October of 2010. (See Guerrier Decl., Exhibit 4).

**B. Request for Prompt Determination Pursuant to Section 505(b)**

13. In April 2012, the IRS received Trustee Goldberg's request for prompt determination of unpaid tax liabilities under Bankruptcy Code section 505(b) for tax years 2003, 2004, 2005, among other tax years, on behalf of the Estate. (See Declaration In Support of United States' Motion for Summary Judgment ("Vallina Decl.") ¶ 2).

14. In a letter dated June 18, 2012, the IRS notified Trustee Goldberg that the joint income tax returns he submitted in support of his request for prompt determination for the years 2003 through 2005 did not qualify for prompt determination under Section 505(b) of the Bankruptcy Code because they were claims for refund and that Section 505(b) only permits a trustee to request a prompt determination of an unpaid tax liability. (Vallina Decl.) ¶ 3; Id., Exhibit 1). The IRS's letter also stated that those returns would

4

nonetheless be examined by the IRS despite Trustee Goldberg's failure to file a request for prompt refund of tax under Section 505(a) of the Bankruptcy Code. (Id.).

15. The claims for refund Trustee Goldberg filed for tax years 2003 through 2005 were based on an election to carry back an NOL generated in tax year 2008 by seven pass-through entities wholly owned by Juan Puig (hereinafter the "S-corporations") to be applied to reduce Debtors federal tax liabilities for tax years 2003 through 2005. (Vallina Decl. ¶ 4).

16. The IRS's Insolvency Unit began an examination of the refund claims and an examination of the 2008 NOL claims; however, on May 25, 2012, the IRS mistakenly issued refunds to Trustee Goldberg for tax years 2004 and 2005 in the amounts of $271,187.00 and $785,061.00 respectively, while the Insolvency Unit's examination of the 2008 NOL was still pending. (Vallina Decl. ¶ 5).

**C. The 2008 NOL**

17. The 2008 NOL originated from the following S-corporations identified on the IRS Form 1120S, Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. ("Schedule K-1") filed by Trustee Goldberg on behalf of Debtors for tax year 2008:

    a. Arbor Heights, LLC ("Arbor Heights");

    b. Sienna, LLC ("Sienna");

    c. The Laurels at Sherwood, LLC ("Laurels");

    d. Sunset Pointe At Fort Myers, LLC ("Sunset Pointe");

    e. Venetia Country Club, LLC ("Venetia");

    f. Park View At Palm Beach, LLC ("Park View"); and

    g. Puig, Inc.

(See Vallina Decl. ¶ 6; Id., Exhibit 2).

**Arbor Heights**

18.     Arbor Heights was organized under the laws of the State of Florida as a Limited Liability Company ("LLC").  (Vallina Decl. ¶ 7; See also Guerrier Decl., Exhibit 5). Thereafter, an election was made by Juan Puig to treat Arbor Heights as a Subchapter S-corporation for federal tax purposes.  (Id.; Vallina Decl. ¶ 7;Id., Exhibit 3).

19.     Arbor Heights reported business losses of $67,287.00 on the Schedule K-1 filed by Trustee Goldberg for tax year 2008.  (Vallina Decl. ¶ 8;Id., Exhibit 2).  The IRS determined the allowed loss attributable to Arbor Heights for tax year 2008 as follows:

| Year | Ordinary Business Income (Loss) | Separately Stated Items | Basis | Allowed Loss | Suspended Loss |
|---|---|---|---|---|---|
| 2005 | (31,281.00) | | | | (31,281.00) |
| 2006 | (1,154,546.00) | | | | (1,185,827.00) |
| 2007 | (1,106,192.00) | | | | (2,292,019.00) |
| 2008 | (67,287.00) | 1,446.00 | | (1,446.00) | (2,357,860.00) |

(Vallina Decl. ¶ 8;Id., Exhibits 4 -7).

20.     The allowed loss attributable to Arbor Heights for tax year 2008 is $1,446.00 based upon the calculation set forth above.  (Vallina Decl. ¶ 10).

21.     Arbor Heights reported an item of income of $59,779 in tax year 2005.  (Vallina Decl. ¶ 9;Id., Exhibit 8).  The IRS could not establish that Juan Puig reported this item of income on his federal tax return for 2005; therefore, this item of income was not taken into account in determining Juan Puig's basis in the company's stock. (Vallina Decl. ¶ 9;Id., Exhibits 9-10).

22.     IRS records indicate that Arbor Heights is a subsidiary of Puig, Inc.  (Vallina Decl. ¶ 11).

**Sienna**

23.     Sienna was organized under the laws of the State of Florida as an LLC. (Vallina Decl. ¶ 12; See also Guerrier Decl., Exhibit 6). Thereafter, an election was made by Juan Puig to treat Sienna as a Subchapter S-corporation for federal tax purposes. (Vallina Decl. ¶ 12; Id., Exhibit 11).

24.     Sienna reported business losses of $1,228.00 on the Schedule K-1 filed by Trustee Goldberg for tax year 2008. (Vallina Decl. ¶ 13; Id., Exhibit 2). The IRS determined the allowed loss attributable to Sienna for tax year 2008 as follows:

| Year | Ordinary Business Income (Loss) | Separately Stated Items | Basis | Allowed Loss | Suspended Loss |
|---|---|---|---|---|---|
| 2005 | | | | | |
| 2006 | 99,824.00 | | | | - |
| 2007 | (4,329,545.00) | | | | (4,329,545.00) |
| 2008 | (1,228.00) | 9,161.00 | | (7,933.00) | (4,321,612.00) |

(Vallina Decl. ¶ 13; Id., Exhibits 12-15).

25.     The allowed loss for Sienna for tax year 2008 consists of the ordinary business loss for tax year 2008 plus a share of the prior year's suspended loss to the extent of basis for a total of $7,933.00. (Vallina Decl. ¶ 17).

26.     Sienna reported an item of income of $38,436.00 in tax year 2005. (Vallina Decl. ¶ 14; Id., Exhibit 16). The IRS could not establish that Juan Puig reported this item of income on his tax return for 2005; therefore, this item of income was not taken into account in determining Juan Puig's basis in the stock of the company. (Vallina Decl. ¶ 14; Id., Exhibits 9-10).

27.     Sienna generated $99,824.00 of ordinary business income in tax year 2006. (Vallina Decl. ¶ 15; Id., Exhibit 13). Juan Puig did not file a federal tax return for tax

7

year 2006; therefore, this item of income was not taken into account in determining Juan Puig's basis in the stock of the company. (Vallina Decl. ¶ 15; Id., Exhibit 17).

28.     Sienna generated ordinary losses of $4,329,545.00 in tax year 2007. (Vallina Decl. ¶ 16; Id.; Exhibit 14). Juan Puig did not file a federal tax return for tax year 2007 and the IRS reduced his basis in the stock of the company by this item of loss. (Vallina Decl. ¶ 16; Id., Exhibit 18).

29.     IRS records indicate that Sienna is a subsidiary of the entity known as Puig, Inc. (Vallina Decl. ¶ 18).

**Laurels**

30.     Laurels was organized under the laws of the State of Florida as an LLC. (Vallina Decl. ¶ 19; See also Guerrier Decl., Exhibit 7). Thereafter, an election was made by Juan Puig to treat Laurels as a Subchapter S-corporation for federal tax purposes. (Vallina Decl. ¶ 19;Id., Exhibit 19).

31.     Laurels reported ordinary business losses of $1,118.00 on the Schedule K-1 filed by Trustee Goldberg for tax year 2008. (Vallina Decl. ¶ 20; Id. Exhibit 2). The IRS determined the allowed loss attributable to Laurels for tax year 2008 as follows:

| Year | Ordinary Business Income (Loss) | Separately Stated Items | Basis | Allowed Loss | Suspended Loss |
|---|---|---|---|---|---|
| 2005 | (62,640.00) | | | | (62,640.00) |
| 2006 | 2,514,057.00 | | | | (62,640.00) |
| 2007 | (673,304.00) | | | | (735,944.00) |
| 2008 | (1,118.00) | 2,227.00 | | (1,109.00) | (734,835.00) |

(Vallina Decl. ¶ 20; Id. Exhibits 20-23).

32. The allowed loss attributable to Laurels for tax year 2008 is $1,109.00 based upon the calculations set forth above. (Vallina Decl. ¶ 24).

33. Laurels generated losses of $62,640.00 in tax year 2005. The IRS could not establish that Juan Puig reported this item of loss in 2005 and this item of loss was included in reducing Juan Puig's basis in the stock of the company. (Vallina Decl. ¶ 21; Id., Exhibits 9-10).

34. Laurels generated ordinary business income of $2,514,057.00 in 2006. (Vallina Decl. ¶ 22; Id., Exhibit 21). Juan Puig did not file a federal tax return for tax year 2006; therefore, this item of income was not taken into account in determining his basis in the stock of the company. (Vallina Decl. ¶ 22; Id., Exhibit 17).

35. Laurels generated ordinary business losses of $673,304.00 in tax year 2007. (Vallina Decl. ¶ 23; Id., Exhibit 22). Juan Puig did not file a federal tax return for tax year 2007 and the IRS reduced his basis in the stock of the company by this item of loss. (Vallina Decl. ¶ 23; Id., Exhibit 18).

36. IRS records indicate that Laurels is a subsidiary of Puig, Inc. (Vallina Decl. ¶ 25).

**Sunset Pointe**

37. Sunset Pointe was organized under the laws of the State of Florida as an LLC. (Vallina Decl. ¶ 26; See also Guerrier Decl., Exhibit 8). Thereafter, an election was made by Juan Puig to treat Sunset Pointe as a Subchapter S-corporation for federal tax purposes. (Vallina Decl. ¶ 26; Id., Exhibit 24).

38. Sunset Pointe reported ordinary business losses of $1,150.00 on the Schedule K-1 filed by Trustee Goldberg for tax year 2008. (Vallina Decl. ¶ 27; Id., Exhibit 2). The

9

IRS determined the allowed loss attributable to Sunset Pointe for tax year 2008 as follows:

| Year | Ordinary Business Income (Loss) | Separately Stated Items | Basis | Allowed Loss | Suspended Loss |
|---|---|---|---|---|---|
| 2005 | (517,972.00) | | | | (517,972.00) |
| 2006 | 3,274,046.00 | | | | (517,972.00) |
| 2007 | (153,909.00) | | | | (671,881.00) |
| 2008 | (1,150.00) | 36.00 | | (36.00) | (672,995.00) |

(Vallina Decl. ¶ 27; Id., Exhibits 25 - 28).

39.    The allowed loss attributable to Sunset Pointe for tax year 2008 is $36.00 based upon the calculations set forth above. (Vallina Decl. ¶ 31).

40.    Sunset Pointe reported an item of income of $38,507.00 in tax year 2005. (Vallina Decl. ¶ 28). The IRS could not establish that Juan Puig reported this item of income on his tax return for 2005; therefore, this item of income was not taken into account in determining Juan Puig's basis in the stock of the company. (Vallina Decl. ¶ 28; Id., Exhibits 9-10).

41.    Sunset Pointe generated ordinary business income of $3,274,046.00 in tax year 2006. (Vallina Decl. ¶ 29; Id., Exhibit 26). Juan Puig did not file a federal tax return for tax year 2006; therefore, this item of income was not taken into account in determining Debtors' basis in the stock of the company. (Vallina Decl. ¶ 29; Id., Exhibit 17).

42.    Sunset Pointe generated ordinary business losses of $153,909.00 in tax year 2007. (Vallina Decl. ¶ 30; Id., Exhibit 27). Juan Puig did not file a federal tax return for 2007 and the IRS reduced his basis in the stock of the company by this item of loss. (Vallina Decl. ¶ 30; Id., Exhibit 18).

10

43.     IRS records indicate that Sunset Pointe is a subsidiary of Puig, Inc.  (Vallina Decl. ¶ 32).

**Venetia**

44.     Venetia was organized under the laws of the State of Florida as an LLC.  (Vallina Decl. ¶ 33; See also Guerrier Decl., Exhibit 9).  Thereafter, an election was made by Juan Puig to treat Venetia as a Subchapter S-corporation for federal tax purposes.  (Vallina Decl. ¶ 33; Id., Exhibit 29).

45.     Venetia reported ordinary business losses of $3,236,099.00 on the Schedule K-1 filed by Trustee Goldberg for tax year 2008.  (Vallina Decl. ¶ 34; Id., Exhibit 2).  The IRS determined the allowed loss for tax year 2008 as follows:

| Year | Ordinary Business Income (Loss) | Separately Stated Items | Basis | Allowed Loss | Suspended Loss |
|---|---|---|---|---|---|
| 2005 | (158,482.00) | | | | (158,482.00) |
| 2006 | 2,041,166.00 | | | | (158,482.00) |
| 2007 | (57,534.00) | | | | (216,016.00) |
| 2008 | (3,236,099.00) | | | | (3,452,115.00) |

(Vallina Decl. ¶ 34; Id., Exhibits 30-33).

46.     There is no allowed loss attributable to Venetia for tax year 2008 based upon the calculations set forth above.  (Vallina Decl. ¶ 38).

47.     Venetia generated losses of $158,482.00 in tax year 2005.  (Vallina Decl. ¶ 35).  The IRS could not determine whether this item of loss was reported by Juan Puig in 2005 and included this item of loss in reducing Juan Puig's basis in the stock of the company.  (Vallina Decl. ¶ 35; Id. Exhibits 9-10).

48. Venetia generated ordinary business income of $2,041,166.00 in tax year 2006. (Vallina Decl. ¶ 36; Id., Exhibit 31). Juan Puig did not file a federal tax return for tax year 2006; therefore, this item of income was not taken into account in determining his basis in the stock of the company. (Vallina Decl. ¶ 36; Id., Exhibit 17).

49. Venetia generated ordinary business losses of $57,534.00 in tax year 2007. (Vallina Decl. ¶ 37; Id., Exhibit 32). Juan Puig did not file a federal tax return for tax year 2007 and the IRS reduced his basis in the stock of the company by this item of loss. (Vallina Decl. ¶ 37; Id., Exhibit 18).

50. IRS records indicate that Venetia is a subsidiary of Puig, Inc. (Vallina Decl. ¶ 39).

**Park View**

51. Park View was organized under the laws of the State of Florida as an LLC. (Vallina Decl. ¶ 40; Guerrier Decl., Exhibit 10). Thereafter, an election was made by Juan Puig to treat Park View as a Subchapter S-corporation for federal tax purposes. (Vallina Decl. ¶ 40; Id., Exhibit 34).

52. Park View reported ordinary business losses of $380,850.00 on the Schedule K-1 filed by Trustee Goldberg for tax year 2008. (Vallina Decl. ¶ 41; Id., Exhibit 2). The IRS determined the allowed loss attributable to Park View for tax year 2008 as follows:

| Year | Ordinary Business Income (Loss) | Separately Stated Items | Basis | Allowed Loss | Suspended Loss |
|------|---------------------------------|--------------------------|-------|--------------|----------------|
| 2005 | (449,984.00) | | | | (449,984.00) |
| 2006 | 1,324,092.00 | | | | (449,984.00) |
| 2007 | 60,105.00 | | | | (449,984.00) |
| 2008 | (380,850.00) | - | | - | (830,834.00) |

(Vallina Decl. ¶ 41; Id., Exhibits 35-38).

12

53. There is no allowed loss attributable to Park View for tax year 2008 based upon the calculations set forth above. (Vallina Decl. ¶ 45).

54. Park View reported an item of income of $14,251.00 in tax year 2005. (Vallina Decl. ¶ 42; Id., Exhibit 39). The IRS could not establish that Juan Puig reported this item of income on his tax return for 2005; therefore, this item of income was not taken into account in determining Juan Puig's basis in the stock of the company. (Vallina Decl. ¶ 42; Id., Exhibits 9-10).

55. Park View generated ordinary business income of $1,324,092.00 in tax year 2006. (Vallina Decl. ¶ 43; Id., Exhibit 36). Juan Puig did not file a federal tax return for tax year 2006; therefore, this item of income was not taken into account in determining his basis in the stock of the company. (Vallina Decl. ¶ 43; Id., Exhibit 17).

56. Park View generated ordinary business income of $60,105.00 in 2007. (Vallina Decl. ¶ 44; Id., Exhibit 37). Juan Puig did not file a federal tax return for tax year 2007; therefore, this item of income was not taken into account in determining his basis in the stock of the company. (Vallina Decl. ¶ 44; Id., Exhibit 18).

57. IRS records indicate that Park View is a subsidiary of Puig, Inc. (Vallina Decl. ¶ 46).

**Puig, Inc.**

58. Puig, Inc. is a Florida corporation incorporated under the laws of the State of Florida. (Guerrier Decl., Exhibit 11).

59. Puig, Inc. reported ordinary business losses of $9,553,627.00 on the Schedule K-1 filed by Trustee Goldberg for tax year 2008. (Vallina Decl. ¶47; Id. Exhibit 2). The IRS determined the allowed loss attributable to Puig, Inc. for tax year 2008 as follows:

13

| Year | Ordinary Business Income (Loss) | Separately Stated Items | Basis | Allowed Loss | Suspended Loss |
|---|---|---|---|---|---|
| 1996 | - | | | | - |
| 1997 | (11,358.00) | | | | (11,358.00) |
| 1998 | 64,930.00 | | 53,572.00 | 11,358.00 | - |
| 1999 | 19,884.00 | - | 73,456.00 | - | - |
| 2000 | 39,178.00 | - | 112,634.00 | - | - |
| 2001 | 179,631.00 | - | 292,265.00 | | - |
| 2002 | 159,102.00 | (6,076.00) | 445,291.00 | | - |
| 2003 | 44,040.00 | - | 489,331.00 | | - |
| 2004 | 640,275.00 | (65,460.00) | 1,064,146.00 | | - |
| 2005 | 852,493.00 | (51,198.00) | 1,865,441.00 | | - |
| 2006 | 2,665,756.00 | - | 1,865,441.00 | - | - |
| 2007 | (24,694,990.00) | - | | (1,865,441.00) | (22,829,549.00) |
| 2008 | (9,553,627.00) | 35,994.00 | | (35,994.00) | (32,347,182.00) |

(Vallina Decl. ¶ 47; Id., Exhibits 40-52)

60.     The allowed loss attributable to Puig, Inc. for tax year 2008 consists of the ordinary business loss for 2008 plus a share of the prior year's suspended loss to the extent of basis for a total of $35,994.00.  (Vallina Decl. ¶ 50).

61.     Puig, Inc. generated ordinary business income of $2,665,756.00 in tax year 2006. (Vallina Decl. ¶ 48; Id., Exhibit 50).  Juan Puig did not file a federal tax return for tax year 2006; therefore, this item of income was not taken into account in determining his basis in the stock of the company.  (Vallina Decl. ¶ 48; Id., Exhibit 17).

62.     Puig, Inc. generated ordinary business losses of $24,694,990.00 in tax year 2007. (Vallina Decl. ¶ 49; Id., Exhibit 51).  Juan Puig did not file a federal tax return for 2007 and the IRS reduced his basis in the stock of the company by this item of loss.   (Vallina Decl. ¶ 49; Id., Exhibit 18).

**D. Allowed Losses of S-Corporations**

63.     The allowed loss for each of the wholly owned flow through entities of Juan Puig for tax year 2008 is as follows:

| Entity | Allowed Loss |
|---|---|
| Arbor Heights | (1,446.00) |
| Sienna | (7,933.00) |
| The Laurels | (1,109.00) |
| Sunset Pointe | (36.00) |
| Venetia | - |
| Park View | - |
| Puig, Inc., | (35,994.00) |
| Total | (46,518.00) |

(Vallina Decl. ¶ 51).

64.     Juan Puig did not file a proper IRS Form 8869, Qualified Subchapter S Subsidiary Election "Q Sub" on behalf of the S-corporations. (Vallina Decl. ¶ 52).

65.     Trustee Goldberg and/or Debtors did not provide the IRS with a schedule of Juan Puig's stock and debt basis in the S-corporations. (Vallina Decl. ¶ 53).

66.     The IRS has no records of any loans being made from Juan Puig and/or Debtors to the S-corporations and Juan Puig has not provided any evidence that he personally provided funds to any of the entities. (Vallina Decl. ¶ 54).

67.     Juan Puig and/or Debtors did not file a federal tax return for tax year 2006. (Vallina Decl. ¶ 55).

68.     Juan Puig and/or Debtors did not file a federal tax return for tax year 2007. (Vallina Decl. ¶ 56).

### E. The Notice of Deficiency

69.     On September 4, 2012, the IRS issued a Notice of Deficiency to Debtors concerning the refunds received by Trustee Goldberg for tax years 2004 and 2005 based upon the IRS's determination that the Debtors did not substantiate the 2008 NOL within the meaning of Section 172 of the Internal Revenue Code.   (Vallina Decl. ¶ 57; Id., Exhibit 53).  The Notice of Deficiency explained that Debtors did not establish that they

15

sustained a NOL within the meaning of Section 172 of the Internal Revenue Code for tax year 2008; therefore, the amounts Trustee Goldberg claimed as NOL carrybacks ($13,088,827.00 for tax year 2004 and $12,241,558.00 for tax year 2005) were not available to carryback to those tax years. (Id. See also Vallina Decl., Exhibit 54).

70. The IRS also explained that Debtors did not sustain a NOL within the meaning of Section 172 of the Internal Revenue Code for tax years 2008 from the S-corporations with regard to the ordinary losses claimed on Debtors' 2008 return. (Vallina Decl. ¶ 58; Id., Exhibit 53). Therefore, the allowable distributive losses were limited to Debtors' adjusted basis of the stock in the S-corporations and adjusted basis in any indebtedness of the S-corporations under Section 1366 of the Internal Revenue Code. (Id.). Since Debtors did not establish basis in the S-corporations, the amount of any flow-through losses allowable to Debtors in the computations of NOL carrybacks to tax years 2004 and 2005 was considered to be zero. (Id.). Accordingly, Debtors' taxable income was increased by $13,088,827.00 and $12,241,558.00 for tax years 2004, and 2005, respectively, resulting in a deficiency of $271,187.00 for tax year 2004 and a deficiency of $785,061.00 for tax year 2005. (Id.).

71. Debtors did not petition the United States Tax Court to redetermine the deficiency assessed by the IRS against them for tax years 2004 and 2005 within the statutory period provided by the Internal Revenue Code. (Vallina Decl. ¶ 59).

      Respectfully submitted,

      KATHRYN KENEALLY

By:   */s/ Pascale Guerrier*
      Pascale Guerrier
      Trial Attorney, Tax Division
      U.S. Department of Justice
      555 4th Street, N.W., Room 6214
      Washington, D.C. 20001
      Telephone: (202) 353-1978
      Telecopier: (202) 514-4963
      E-mail:Pascale.Guerrier@usdoj.gov

      Of Counsel:

      WIFREDO FERRER
      United States Attorney
      Southern District of Florida
      99 NE 4th Street
      Miami, FL 33132
      Telephone: (305) 961-9000
      Telecopier: (305) 530-7087

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on July 22, 2013, a true and correct copy of the foregoing was filed electronically through the Court's ECF filing system which will serve all parties of record including the following:

Drew Dillworth, Esquire
STEARNS WEAVER MILLER et al
Counsel to Trustee Goldberg
150 West Flagler Street, Suite 2200
Miami, Florida 33130

Ascension Capital Group, Inc.
Attn: BMW Bank of North America, Inc. Department
Account: XXXXX4724
P.O. Box 201347
Arlington, TX 76006

                   By:*/s/ Pascale Guerrier*