UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

JUAN E. PUIG and
DIANA PUIG,

      Debtors.
_____ /

CASE NO.: 07-15259-RAM

CHAPTER 7
(Substantively Consolidated)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ALAN GOLDBERG
CHAPTER 7 TRUSTEE,

      Defendant.
_____ /

ADV. PROC. NO. 13-01040-RAM

ALAN GOLDBERG
CHAPTER 7 TRUSTEE,

      Counter-plaintiff,

v.

UNITED STATES OF AMERICA,

      Counter-defendant.
_____ /

**MEMORANDUM OF LAW IN SUPPORT OF**
**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

      Plaintiff and Counter-Defendant, United States of America, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Federal Rules of Bankruptcy Procedure, submits the following Memorandum of Law in support of United States' Motion for Summary Judgment in the above-referenced adversary case.

1

## I. <u>BACKGROUND</u>[1]

The United States brought this adversary proceeding pursuant to Section 7405 of the Internal Revenue Code (26 U.S.C.) to recover two erroneous refunds totaling $1,056,248.00 the Internal Revenue Service issued to Defendant and Counter-Plaintiff Alan Goldberg, Chapter 7 Trustee ("Trustee Goldberg") regarding the federal tax liabilities of Juan Puig and Diana Puig's (collectively "Debtors") for the 2004 and 2005 tax years.

In April of 2012, Trustee Goldberg filed a request for prompt determination of tax liability pursuant to Bankruptcy Code Section 505(b) (11 U.S.C.) with the IRS on behalf of the bankruptcy estate for tax years 2004 and 2005 and other tax years not relevant in this action. The IRS notified Trustee Goldberg that the returns he submitted for the 2004 and 2005 tax years along with the request for prompt determination did not qualify for prompt determination under 11 U.S.C. § 505(b) because they were claims for refund and because Section 505(b) only allows prompt determination of unpaid tax liabilities. Nonetheless, the IRS conducted an examination of those tax years and treated the corresponding request for prompt determination as claims for refund despite Trustee Goldberg's failure to file a proper request for prompt refund of tax under Section 505(a) of the Bankruptcy Code.

The claims for refund for the 2004 and 2005 tax years were based on an election to carry back a claimed net operating loss ("NOL") generated in tax year 2008 by several S-corporations wholly owned by debtor Juan Puig (hereinafter the "Puig S-corporations") to be applied to Debtors' federal tax liabilities for tax years 2004 and 2005, resulting in

---

[1] The United States relies upon its Statement of Undisputed Material Facts filed contemporaneously herewith.

refunds for those years. In May of 2012, the IRS mistakenly issued refunds to Trustee Goldberg for 2004 and 2005 while an examination of the refund claims was ongoing and before the IRS's Insolvency Unit had the opportunity to complete its examination of the claimed NOL.[2]

The IRS ultimately disallowed the claimed 2008 NOL because Trustee Goldberg failed to establish that Debtors had adequate basis to claim their share of the losses originating from the Puig S-corporations pursuant to Section 172 of the Internal Revenue Code, after properly adjusting basis in accordance with the Internal Revenue Code, to apply to Debtors' tax liabilities for tax years 2004 and 2005. The IRS's determination is supported by Trustee Goldberg's admissions that he (1) did not have "possession of all corporate and financial accounting records or tax returns of the Debtor," (2) had " no additional information available," and (3) lacked "sufficient financial data to calculate and determine any basis and loss limitations for the Debtors stemming from the S-corporations" in support of the refund claims. (See Defendant's Response to United States' Request for Admissions ("Admissions") ¶¶ 12-14, Guerrier Decl., Exhibit 2). Accordingly, there are no genuine issues of material facts and the United States is entitled to summary judgment as a matter of law on its claim for erroneous refund.

## II. ARGUMENT

### A. The United States is entitled to recover the erroneous refunds issued to Trustee Goldberg for tax years 2004 and 2005

The Internal Revenue Code authorizes the United States to recover an erroneous refund. See 26 U.S.C. § 7405. Section 7405(b) states that "[a]ny portion of a tax

---

[2] In addition to the claims he submitted in April of 2012, Trustee Goldberg originally submitted claims for refund for tax years 2004 and 2005 to the IRS in October of 2010. (See Declaration of Pascale Guerrier ("Guerrier Decl.") Exhibit 4, ¶¶ 1, 7).

imposed by this title which has been erroneously refunded … may be recovered by civil action brought in the name of the United States." Id.; United States v. Wurts, 303 U.S. 414, 416 (1938); Merlin v. Sander, 243 F. 2d 821 (5th Cir. 1957);[3] United States v. Carey, 1980 U.S. Dist. LEXIS 13756 (S.D. Fla. 1980).  The United States must bring a Section 7405 action within two years of payment of the refund.  26 U.S.C. § 6532(b); United States v. Brokemond, No: 08-12367, 2008 U.S. App. LEXIS 24651 (11th Cir. 2008).

Generally, to prevail on an erroneous refund suit under Section 7405, the United States must show: (1) that a refund was paid to the taxpayer; (2) the amount of the refund; (3) that the United States' action to recover the refund was timely; and (4) that the taxpayer was not entitled to the refund.  See Brokemond, 2008 U.S. App. LEXIS 24651; United States v. Moreno, 1980 U.S. Dist. LEXIS 12355 (S.D. Fla. 1980).  But, in a suit where deductions are claimed by a taxpayer under the Internal Revenue Code, the burden is always on the taxpayer to prove his or her entitlement to the deductions.  See, e.g., United States v. McFerrin, 570 F.3d 672 (5th Cir. Tex. 2009); see also United States v. Davenport, 2012 U.S. Dist. LEXIS 131468 (N.D. Tex. 2012); United States v. Beltecno Inc. & Subsidiaries, 2009 U.S. Dist. LEXIS 80591 (W.D. Wash. 2009); United States v. Claycraft Co., 364 F. Supp. 1358 (S.D. Ohio 1972).  Therefore, the United States' burden in an erroneous refund suit where deductions are claimed can be met by showing that the taxpayer has no evidence to prove his entitlement to a deduction.  See United States v. Anderson, 364 F. Supp. 2d 569 (D.S.C. 2004).

---

[3] This Court has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Here, Trustee Goldberg failed to produce any evidence during discovery or at any other time to support the refunds he erroneously received for tax years 2004 and 2005. Therefore, the Court should grant the United States summary judgment and permit it to recover the erroneous refunds.  Anderson, 364 F. Supp. 2d 569.

**B. Trustee Goldberg failed to establish that he is entitled to the NOLs that generated the erroneous refunds he received from the IRS for tax years 2004 and 2005**

Trustee Goldberg failed to prove he was entitled to the deductions that generated the refunds. He failed to establish that Debtors had sufficient basis in the stock of the Puig S-corporations to apply the claimed 2008 NOL to Debtors' federal tax liabilities for the 2004 and 2005 tax years and claim refunds on behalf of the bankruptcy estate for those years. Indeed, Trustee Goldberg admitted that he lacked the necessary financial records to determine basis on behalf of the Debtors. (See Admissions ¶¶ 12-14, Guerrier Decl., Exhibit 2). Moreover, even before examining the Trustee's lack of evidence as to basis, the undisputed facts show that the Debtors lacked basis to claim the losses that generated the NOLs. Therefore, summary judgment should be granted in favor of the United States.

**1. Debtors lacked sufficient basis in the stock of the Puig S-corporations to apply the claimed 2008 NOL**

An NOL results from deductions in excess of gross income for a given year. See 26 U.S.C. § 172(c). Once sustained, under § 172(b)(1)(A), a taxpayer may carry the NOL either backward to past tax years or forward to future tax years in order to "set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." See United Dominion Indus., Inc. v. United States, 532 U.S. 822, 825 (2001) citing Libson Shops, Inc. v. Koehler, 353

5

U.S. 382, 386 (1957). Generally, an NOL is first carried back to offset tax income for the two tax years preceding the year in which the NOL was incurred; and, to the extent that it was not carried back to a previous tax year, it can be carried forward to offset tax income for 20 years after the year in which the NOL was incurred. See 26 U.S.C. § 172(b)(1)(A).[4] An NOL must be consumed in the earliest year for which there is income available to be offset by the loss. Id. at 172(b)(2). Any excess NOL that is not consumed in one year is carried to the next earliest year. Id. A taxpayer may elect to waive the carry back option and carry forward the entire NOL to offset future tax liabilities. See 26 U.S.C. § 172(b)(3). Once this election is made, it is deemed to be irrevocable. Id.[5]

Shareholders in an S-corporation can deduct their pro rata share of the corporation's NOL on their individual tax returns, if applicable, but only to the extent of: (1) the shareholder's adjusted basis in the corporation's stock; and (2) the shareholder's adjusted basis in any indebtedness of the corporation. See Rose v. Comm'r, No: 07-12245, 2008 U.S. App. LEXIS 9287 (11th Cir. 2008) citing Selfe v. United States, 778 F.2d 769, 771 (11th Cir. 1985).[6] The Internal Revenue Code requires S-corporation

---

[4] The NOL carryback period for tax years ending in 2008 is 2003 (the fifth preceding taxable year or earliest year to which the NOL could have been carried back). See 26 U.S. C. § 172(b)(1)(H). See also Rev. Proc. 2009-52, which explains that Section 13 of the Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. No. 111-92, 123 Stat. 2984 (November 6, 2009) amended Section 172(b)(1)(H) to allow taxpayers to elect to carry back an applicable NOL for a period of 3, 4, or 5 years, to offset taxable income in those preceding taxable years.

[5] A bankruptcy estate can offset income it generates during bankruptcy with any of the debtor's operating losses to which it succeeds. See 26 U.S.C. §§ 1398(e)(1) and (f)(1), 172(b)(2).

[6] An S-corporation is taxed at the individual rather than the enterprise level. See 26 U.S.C. §§ 1361 et seq. Therefore, its income, deductions, losses, and credits "flow-through" or "pass-through" directly to its shareholders on pro rata basis and are then reported on the shareholders' individual tax returns. See 26 U.S.C. § 1366(a); Bufferd v.

shareholders, when calculating their taxable income for the year, to take into account their pro rata share of the S-corporation's items of income, loss, deduction, or credit for the S-corporation's tax year that ends in the tax year of the shareholder.  See 26 U.S.C. § 1366(a); Treas. Reg. § 1.1366-1(a).[7]  However, the S-corporation's loss taken into account by a shareholder cannot exceed the amount calculated under section 1366(d)(1) for the shareholder for the tax year of the corporation.  See 26 U.S.C. § 1366(d)(1); Barnes v. Comm'r, 712 F.3d 581 (D.C. Cir. 2013) affg. T.C. Memo 2012-80.  The section 1366(d)(1) limitation is equal to the shareholder's adjusted basis of stock at the end of the corporation's tax year of the loss, plus the shareholder's adjusted basis of any debt of the S-corporation to the shareholder at the end of the corporation's year of the loss.  See 26 U.S.C. § 1366(d)(1)(A) and (B); Treas. Reg. §§ 1.1366-2(a)(3), 1.1367-1(d)(1), 1.1367-2(d); Barnes, 712 F.3d 581.[8]  Losses or deductions that are disallowed as

---

Comm'r, 506 U.S. 523, 525 (1993) ("Subchapter S allows shareholders of qualified corporations to elect a 'pass-through' taxation system under which income is subjected to only one level of taxation.")  The shareholder's pro-rata share of these items is reported on Schedule K-1, Partner's Share of Income, Credits, Deductions etc. ("Schedule K-1").

[7] Section 1366(a) provides, in relevant part:
(a) Determination of Shareholder's Tax Liability. --
(1) In general. -- In determining the tax under this chapter of a shareholder for the shareholder's taxable year in which the taxable year of the S-corporation ends * * *, there shall be taken into account the shareholder's pro rata share of the corporation's --
(A) items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and
(B) nonseparately computed income or loss.
26 U.S.C. § 1366(a).

[8] Section 1366(d) provides in pertinent part:
(d) Special Rules for Losses and Deductions. --
(1) Cannot exceed shareholder's basis in stock and debt. -- The aggregate amount of losses and deductions taken into account by a shareholder under subsection (a) for any taxable year shall not exceed the sum of --
(A) the adjusted basis of the shareholder's stock in the S-corporation * * *, and

a result of the shareholder's basis limitation are suspended and allowed in a later year when the shareholder has sufficient basis to deduct the losses or claim the deductions. See 26 U.S.C. § 1366(d)(2).

Pursuant to section 1367(a)(1)(A), a shareholder's tax basis in the stock of an S-corporation is adjusted to reflect the shareholder's pro rata share of income, losses, deductions, and credits of the S-corporation, as calculated under section 1366(a)(1). See 26 U.S.C. § 1367(a)(1)(A). [9] A shareholder's tax basis in the stock of an S-corporation is increased by the shareholder's share of the S-corporation's income items (including tax-exempt income), among other items of income described in section 1366(a)(1)(A), see 26 U.S.C. §1367(a)(1)(A); however, basis is increased "only to the extent such [item of income] is included in the shareholder's gross income on his return." Id. § 1367(b)(1); Barnes, 712 F.3d at 584.  Furthermore, a shareholder of an S-corporation must make an

---

(B) the shareholder's adjusted basis of any indebtedness of the S-corporation to the shareholder * * *.
26 U.S.C. § 1366(d).

[9] 26 U.S.C. § 1367.  Adjustments to basis of stock of shareholders, etc.
(a) General rule.
(1) Increases in basis. The basis of each shareholder's stock in an S-corporation shall be increased for any period by the sum of the following items determined with respect to that shareholder for such period:
(A) the items of income described in subparagraph (A) of section 1366(a)(1) [26 USCS § 1366(a)(1)],
(B) any nonseparately computed income determined under subparagraph (B) of section 1366(a)(1) [26 USCS § 1366(a)(1)], and
***
(b) Special rules.
  (1) Income items. An amount which is required to be included in the gross income of a shareholder and shown on his return shall be taken into account under subparagraph (A) or (B) of subsection (a)(1) only to the extent such amount is included in the shareholder's gross income on his return, increased or decreased by any adjustment of such amount in a redetermination of the shareholder's tax liability.
26 U.S.C. § 1367(a),(b).

actual "economic outlay" in order to increase his basis in the S-corporation.  See Selfe, 778 F.2d at 772 & n.7; see also Underwood v. Comm'r, 535 F.2d 309, 311 (5th Cir. 1976).  In contrast, a shareholder's basis in the stock of an S-corporation is decreased (but not below zero) by the shareholder's pro rata share of losses and deductions, among other things, as specified in section 1367(a)(2).  See 26 U.S.C. § 1367(a)(2).[10]  A shareholder's basis is decreased even if the shareholder does not actually claim the items of pass-through S-corporation losses on the shareholder's return.  Barnes, 712 F.3d at 583.

Applying the foregoing principles here, the IRS determined Debtors' basis in the stock of the Puig S-corporations by examining the pass-through items of income and loss from each of the S-corporations, among other items. [11]  See 26 U.S.C. §§ 1366, 1367. [12]

---

[10] 26 U.S.C. § 1367.  Adjustments to basis of stock of shareholders, etc.
(a)General rule. . .
(2) Decreases in basis. The basis of each shareholder's stock in an S-corporation shall be decreased for any period (but not below zero) by the sum of the following items . . .:
(A) distributions by the corporation which were not includible in the income of the shareholder by reason of section 1368 [26 USCS § 1368],
(B) the items of loss and deduction described in subparagraph (A) of section 1366(a)(1) [26 USCS § 1366(a)(1)],
(C) any nonseparately computed loss determined under subparagraph (B) of section 1366(a)(1) [26 USCS § 1366(a)(1)],
(D) any expense of the corporation not deductible in computing its taxable income and not properly chargeable to capital account, and . . .
26 U.S.C. § 1367(a)(2).

[11] The IRS did not consider debt basis in determining Debtors' basis because the IRS has no records of any loans being made from Juan Puig and/or Debtors to the S-corporations and Juan Puig has not provided any evidence that he personally provided funds to any of the entities.  (See Declaration in Support of Motion for Summary Judgment ("Vallina Decl."), ¶ 54).

[12] IRS records indicate that Puig, Inc., is the parent of the remaining S-Corps.  (See Vallina Decl., ¶¶ 11, 18, 25, 32, 39, 46).  But since Juan Puig failed to make a proper qualified subsidiary "QSub" election on behalf of these subsidiaries, each is treated as a separate entity for purposes of determining basis.  (Id. ¶ 52).  Therefore, basis was

Furthermore, basis was reduced by the pass-through items of loss incurred by the Puig S-corporations even when those losses were not reported on the Debtors' joint returns. Barnes, 712 F.3d at 583.[13] Likewise, certain items of income incurred by the Puig S-corporations that were not reported on Debtors' joint returns were ignored in determining basis. 26 U.S.C. § 1367(b)(1); Barnes, supra, at 584.[14] Other items of income were also ignored where the IRS had no indication that they were reported by Debtors on their returns. Id.[15]

Upon applying the above principles, the IRS determined that Debtors did not sustain a NOL within the meaning of 26 U.S.C. § 172 regarding the Puig S-corporations ordinary losses claimed on Debtors' 2008 return. (See Vallina Decl., ¶¶ 57-58.). The allowable distributive losses were limited to the Debtors' adjusted bases for the stock of the Puig S-corporations. (Id.)[16] Since Debtors did not establish basis in the Puig S-

---

calculated for each subsidiary due to Juan Puig's failure to make a proper qualified subsidiary "QSub" election on behalf of the subsidiaries. See 26 U.S.C. § 1361(b)(3)(A).

[13] Vallina Decl., ¶¶ 16, 21, 23, 30, 35, 37, 49.

[14] Vallina Decl., ¶¶ 15, 22-23, 29-30, 36, 43-44, 48.

[15] Vallina Decl., ¶¶ 9, 14, 28, 42.

[16] The total distributive allowed losses for the Puig S-corporations is $46,518.00. Thus, even if Debtors had sufficient basis to apply these losses, the losses are minimal and would not have generated the refunds at issue. (Vallina Decl., ¶¶ 7-50).

| Entity | Allowed Loss |
|---|---|
| Arbor Heights | (1,446.00) |
| Sienna | (7,933.00) |
| Laurels | (1,109.00) |
| Sunset Pointe | (36.00) |
| Venetia | - |
| Park View | - |
| Puig, Inc., | (35,994.00) |
| **Total** | **(46,518.00)** |

(Id. at ¶ 51).

corporations, the amount of any pass-through losses allowable in computing any NOL carrybacks from 2008 to tax years 2004 and 2005 was deemed to be zero. (Id.). See Better Beverages, Inc. v. United States, 619 F.2d 424, 428 (5th Cir. 1980) (finding that the basis utilized by the IRS enjoys a presumption of correctness even where the IRS has accorded the item a zero basis). As such, Debtors did not have sufficient basis to claim the 2008 NOL and carry back the NOL to the 2004 and 2005 tax years. See Barnes, 712 F.3d 581.

### 2. Trustee Goldberg's failure to substantiate the claimed 2008 NOL also supports disallowance

It is well established that deductions are a matter of legislative grace, and the taxpayer has the burden to establish entitlement to a claimed deduction. See Indopco, Inc. v. Comm'r, 503 U.S. 79 (1992); See, also., McFerrin, 570 F.3d 672; Davenport, 2012 U.S. Dist. LEXIS 131468; Beltecno Inc. & Subsidiaries, 2009 U.S. Dist. LEXIS 80591; Claycraft Co., 364 F. Supp. 1358. This requires the taxpayer to keep and produce adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. See 26 U.S.C § 6001; Hradesky v. Comm'r, 540 F.2d 821 (5th Cir. 1976). A taxpayer claiming a deduction under the Internal Revenue Code must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates was paid or incurred. Id.; Treas. Reg. § 1.6001-1-1(a).

In order to deduct a loss from an S-corporation, a taxpayer must establish that he has acquired basis in the referenced stock and, to the extent that he does, that his basis was not reduced to zero because of losses claimed in years prior to the subject year. See Better Beverages, 619 F.2d at 428. See also Welch v. Comm'r, T.C. Memo 2012-179,

2012 Tax Ct. Memo LEXIS 180 (T.C. 2012) (citations omitted); <u>Arnold v. Comm'r</u>, T.C. Memo 2003-258, 2003 Tax Ct. Memo LEXIS 258 (T.C. 2003).  Taxpayers who fail to prove that they have any basis in an S-corporation are deemed to have a zero basis in that corporation. <u>See</u> <u>Better Beverages,</u> , 619 F.2d at 428.  <u>See also</u> <u>Thomson v. Comm'r</u>, T.C. M. 1983-279, <u>affd. without published opinion</u> 731 F.2d 889 (11th Cir. 1984).

      Here, Trustee Goldberg admits that (1) he did "not have possession of all corporate and financial accounting records or tax returns of the Debtors," (2) had "no additional information," and (3) lacked "sufficient financial data to calculate and determine any basis and loss limitations for the Debtors stemming from the S-corporations K-1's."  Trustee Goldberg, therefore, cannot prove Debtors' basis in the stock of the S-corporations.  (<u>See</u> Admissions ¶¶ 12-14, Guerrier Decl., Exhibit 2).  Thus, Debtors are considered to have a zero basis in the stock of the S-corporations, and Trustee Goldberg is not entitled to the claimed 2008 NOL which resulted in refunds for the 2004 and 2005 tax years.  <u>See</u> <u>Better Beverages,</u> , 619 F.2d at 428.  <u>See also</u> <u>Anderson</u>, 364 F. Supp. 2d 569.

## III. <u>CONCLUSION</u>

      For the foregoing reasons, the United States' motion for summary judgment should be granted.

          Respectfully submitted,

          KATHRYN KENEALLY

By:   */s/ Pascale Guerrier*
      Pascale Guerrier
      Trial Attorney, Tax Division
      U.S. Department of Justice
      555 4th Street, N.W., Room 6214
      Washington, D.C. 20001
      Telephone: (202) 353-1978
      Telecopier: (202) 514-4963
      E-mail:Pascale.Guerrier@usdoj.gov

Of Counsel:

WIFREDO FERRER
United States Attorney
Southern District of Florida
99 NE 4th Street
Miami, FL 33132
Telephone: (305) 961-9000
Telecopier: (305) 530-7087

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 22, 2013, a true and correct copy of the foregoing was filed electronically through the Court's ECF filing system which will serve all parties of record including the following:

Drew Dillworth, Esquire
STEARNS WEAVER MILLER et al
Counsel to Trustee Goldberg
150 West Flagler Street, Suite 2200
Miami, Florida 33130

Ascension Capital Group, Inc.
Attn: BMW Bank of North America, Inc. Department
Account: XXXXX4724
P.O. Box 201347
Arlington, TX 76006

          By:*/s/ Pascale Guerrier*